IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BERNADETTE TSOSIE, Individually and
As the Personal Representative for the Estate
Of IRENE BEKIS-BEGAY, Deceased,

    Plaintiff,

vs.                                                                           No. 1:14-CV-00664-WJ/RHS

THE UNITED STATES OF AMERICA;
ROBERT WEAVER, III, M.D.; FOUR CORNERS
RADIOLOGY ASSOCIATES, P.C.; SAN JUAN REGIONAL
MEDICAL CENTER, INC.; BLACK AND WHITE
CORPORATIONS 1-10; JOHN AND JANE DOES 1-10

    Defendants.

**FIRST AMENDED COMPLAINT FOR MEDICAL
NEGLIGENCE AND WRONGFUL DEATH**

Plaintiffs, by and through their undersigned attorney, and for their complaint against Defendants, state and allege:

**I.**    **PARTIES AND JURISDICTION**

1. This is a wrongful death action pursuant to the Federal Tort Claims Act, 28 USC §2671, *et. seq.* (hereinafter the "FTCA") and New Mexico medical negligence law for medical negligence resulting in the wrongful death of Irene Bekis-Begay. Plaintiff claims that, at all times material, the negligence complained of herein occurred at the Northern Navajo Medical Center operated by the Defendant United States of America through the Department of Health and Human Services, as an Indian Health Services medical facility located in Shiprock, New Mexico. Plaintiff additionally claims that the negligence of Defendant Robert Weaver, III, MD, Defendant Four Corners

1

Radiology Associates, P.C., and Defendant San Juan Regional Medical Center, Inc., all of which are located in Farmington, New Mexico, are jointly and severally liable with all other defendants in the wrongful death of Irene Bekis-Begay.

2. IRENE BEKIS-BEGAY ["Bekis-Begay"], was an enrolled member of the Navajo Nation, a federally recognized tribe of Indians, and was a resident and citizen of Shiprock, Navajo Nation, New Mexico. Bekis-Begay died on April 7, 2012.

3. Plaintiff BERNADETTE TSOSIE ["Tsosie"] is the sole daughter and surviving heir of Irene Bekis-Begay and is a resident and citizen of Gallup, New Mexico, County of McKinley, State of New Mexico. Tsosie is the duly appointed Personal Representative of the Estate of Iris Bekis-Begay as ordered by the Eleventh Judicial District Court, D-1113-CV20-13-223-7 on June 10, 2013.

4. Defendant UNITED STATES OF AMERICA ["United States"], through its agents, employees, and through the Department of Health & Human Services, Public Health Service, and Indian Health Service, all federal agencies, at all times hereinafter mentioned, did and now does, operate a hospital entitled the Northern Navajo Medical Center ["NNMC"] in Shiprock, New Mexico, where claims of the United States' negligence arose. The United States employed medical professionals at NNMC for surgical care and treatment of Navajo patients. The United States employed Laura Higgins, MD, a surgeon, at NNMC who ordered the CT Scan of Ms. Bekis-Begay's abdomen and pelvis operatively on February 29, 2012. However, the NNMC CT scanner was unavailable either due to maintenance, repair or other unknown reasons. Ms. Bekis-Begay was referred to Defendant San Juan Regional Medical Center for the radiological procedure.

5.      Defendant ROBERT R. WEAVER, III, MD ["Weaver"] is a medical doctor practicing as a diagnostic radiologist, and at all times material to the claims for relief herein, was either an owner or co-owner or employed by the Defendant Four Corners Radiology Associates, P.C., 802 West Apache Street, Farmington, New Mexico 87499. Weaver was not a qualified health care provider (QHP) arising under the New Mexico Medical Malpractice Act ("Act")(NMSA, 1978 Section 41-5-1, *et. seq.*), thereby allowing Plaintiffs to bring these causes of action without having to exhaust the administrative requirements of the Act. At all times material, Weaver was an owner, agent, contractor, or employee of Four Corners Radiology, P.C. and San Juan Regional Medical Center.

6.      Defendant FOUR CORNERS RADIOLOGY ASSOCIATES, P.C. ["Four Corners"] is a New Mexico domestic corporation located at 802 West Apache Street, Farmington, New Mexico 87499. Four Corners was the employer of or co-owner with Weaver at the time of the medical negligence claimed herein. Ruth A. Brooks is the registered agent of Defendant Four Corners with address of 802 West Apache Street, Farmington, New Mexico 87499.  Four Corners, through Weaver, had medical privileges at the San Juan Regional Medical Center and was an agent of the Medical Center at all times of Weaver's negligence in providing medical care.

7.      As the employer of Weaver, Four Corners is individually liable for its own acts and failures to act and is vicariously liable for acts and failures to act of Weaver. Four Corners has economic and professional relationships with Weaver and San Juan Regional Medical Center in taking and reading diagnostic CT scans.

3

8. Defendant SAN JUAN REGIONAL MEDICAL CENTER, INC. ["San Juan"] is a New Mexico nonprofit domestic corporation located at 801 West Maple Street, Farmington, New Mexico 87401.  San Juan's registered agent for purposes of service of process is Rick Wallace, 801 West Maple Street, Farmington, New Mexico 87401. At all times material to the claims for relief, Weaver had hospital privileges at San Juan. San Juan issued an identification badge to Weaver for his medical services at San Juan's Department of Radiology. Upon information and belief, on February 29, 2012, an employee of San Juan took a CT scan without contrast of Ms. Bekis-Begay.  On said time and place, San Juan employed, contracted, and otherwise benefited when Weaver and Four Corners performed and read CT Scans for the northwest New Mexico Four Corners, including Colorado and the Navajo Nation.  San Juan had a unique medical relationship with the United States via the Department of Public Health and Human Services providing medical referral consultations with the physicians at the NNMC, Shiprock, NM. San Juan had a duty to ensure that the contractor or employees or agents provide medical care required for diagnostic radiology.

9. Each of the defendants are jointly and severally liable for the wrongful death of Irene Bekis-Begay and Plaintiffs' damages.

10. Defendants JOHN AND JANE DOES 1-10, and BLACK AND WHITE CORPORATIONS 1-5 are fictitious Defendants, the true names or capacities, whether individual, corporate, or otherwise, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names and will ask leave of this Court to amend this Complaint to show their true names and capacities when the same has been ascertained. The New Mexico three year statute of limitations has not run. In the event

4

Plaintiffs need to amend this complaint, such amendment will relate back to the time prior to the statute of limitations elapsing. [FRCP, Rule 15].

11. The claims for which Plaintiffs sue herein arose from the acts and omissions of Defendants as alleged herein all occurred within the State of New Mexico.

12. If the United States was a private person, it would be liable to Plaintiffs in accordance with the laws of the State of New Mexico.

13. On July 25, 2013, within two years of the date of claims set forth herein which are subject to the FTCA, the administrative claims were presented to the United States Department of Health and Human Services, Public Health Service/Indian Health Service, pursuant to 28 U.S.C. §2675(a).  Said agencies have failed to make a final disposition of Plaintiff's claims within six months of presentation to Defendant.  Plaintiff deems such failure to be a denial of her claims as provided by the FTCA.  Plaintiff filed her original complaint with this Court on July 23, 2014.

14. To serve the predominately Native American population of Northern Arizona and Western New Mexico, the United States Public Health Service/Indian Health Service (hereinafter "PHS/IHS") operated and maintained the NNMC where medical services are provided to qualifying members of the Native American community.

## II. JURISDICTION

15.  This is an action against the Defendant United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, *et. seq.* (hereinafter the "FTCA") for medical negligence resulting in the wrongful death and Plaintiff's damages. This court has original and exclusive jurisdiction over the Defendant United States. This Court has

jurisdiction over subject matter hereto pursuant to 28 U.S.C. §1346(b) and the amount in controversy, excluding costs, attorney fees, or punitive damages, exceeds $75,000.00.

16. The court has supplemental jurisdiction over Weaver, Four Corners, San Juan, and Black and White Corporations 1-10 and John and Jane Does 1-10 pursuant to 28 U.S.C. §§1331, 1332, 1367(a), and the Federal Rules of Civil Procedure, Rules 18 and 19, inasmuch as there exists common nucleus of operative facts which warrant the court's exercise of its supplemental jurisdictional authority to hear and decide all the claims for relief. Plaintiff further states that joinder of all of the supplemental defendants will allow for judicial economy of all claims for relief.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

17. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 16 as though fully recited at length herein.

18. On January 10, 2012, Ms. Bekis-Begay was evaluated at the Northern Navajo Medical Center at the surgery clinic by Laura Higgins, MD for an episode of gastroenteritis and an incidental finding of gallstones on CT scan.

19. On January 31, 2012, Ms. Bekis-Begay came to NNMC with right quadrant pain and upper back discomfort. She wished to proceed with elective cholecystectomy to address the gall stone diagnosis.

20. On February 27, 2012, Ms. Bekis-Begay underwent laparoscopic cholecystectomy by Laura Higgins, MD for the pre- and post-operative diagnosis of cholecystitis with cholelithiasis.

21. At surgery, the gallbladder was noted to have adhesions from previous attacks of cholecystitis, but there was no evidence of acute inflammation at the time. The

gallbladder was "grasped at the top and pushed over the edge of the liver" and ultimately "sharply dissected from the liver bed using electrocautery for the dissection".

22. Extensive oozing from the liver bed was noted after the gallbladder was removed. According to the operative report, "it was necessary to pack the liver several times with 4x4s, Surgicele, and ultimately Gelfoam coated with thrombin before the oozing stopped". Estimated blood loss was 500 mL "all from oozing in the liver bed". It was indicated in the operative report, however, that no complications were encountered.

23. Significant oozing had required a drain to be placed.

24. On February 29, 2012, Ms. Bekis-Begay had a chest x-ray which revealed moderate left basilar atelectasis, infiltrate and mild right atelectasis.

25. On February 29, 2012, Dr. Higgins assessed Ms. Bekis-Begay with acute renal failure and ordered a CT scan of the abdomen and pelvis without contrast to assess for bile leak; however, since the CT scanner was broken at NNMC, she was referred to San Juan for such procedure.

26. At said time and place, Ms. Bekis-Begay was at patient at San Juan and was similarly under the control and direction of Weaver and Four Corners. Weaver was issued an identification badge from San Juan at all times material for the CT scan ordered by the United States. The CT scan report revealed "…air in subcutaneous tissues anterior abdominal wall and a small of amount of free intraperitoneal air related to her recent surgery and abdominal drain".

27. On March 1, 2012, at 10:20 p.m., the Rapid Response Team was called due to Ms. Bekis-Begay's clinical deterioration. Eric Gold, MD evaluated Ms. Bekis-Begay for acute shortness of breath, diaphoresis, and discomfort. She now required a

7

non-rebreather (oxygen mask) to keep her saturations above 90%. She complained of surgical incision site discomfort, and Dr. Gold noted she was tachypneic and audibly wheezing. Lung exam revealed bilateral fine rales and diffuse expiratory wheezes. The heart was "tachy" with no murmur. Her extremities had 3+ edema bilaterally. Chest x-rays had revealed a new right lower lobe infiltrate, more prominent fluid in fissure, and a prominent air bubbles under the left diaphragm that was unchanged from the study two days prior.

28.   Dr. Gold diagnosed Ms. Bekis-Begay with acute heart failure, right lower lobe infiltrate, and acute renal failure. He recommended moving her to the ICU and starting diuresis as tolerated.

29.   On March 2, 2012, after being admitted into the ICU, chest x-rays showed numerous patchy infiltrates bilaterally as well as cardiomegaly (enlarged heart). Ultrasound was attempted, but the heart could not be visualized through Ms. Bekis-Begay's distended abdomen for assessment of pericardial fluid. No renal hydronephrosis (water inside the kidney) was seen on either side.

30.   On March 3, 2012, chest x-rays revealed postoperative atelectasis, no pneumothorax, a large amount of subdiaphragmatic free air versus distended viscus, and satisfactory central line placement.

31.   On March 4, 2012, Ms. Bekis- Begay underwent a fully body CT scan which revealed scattered small consolidations consistent with infection, elevated right hemidiaphragm with compressive atelectasis, and pneumoperitoneum consistent with the patient's post-operative state.

32. On March 4, 2012, Dr. Hull reevaluated Ms. Bekis-Begay noting she had been taken off BPAP "again" the previous evening due to agitation. She continued to have persistent tachypnea, but her inspiratory work of breathing had not returned. Dr. Hull also noted that Ms. Bekis-Begay's heart rate was running in the 110's to 130's and her systolic blood pressure was in the high 100's. She was not as agitated, but was less responsive.

33. On March 5, 2012, Dr. Evan Ray reevaluated Ms. Bekis-Begay noting she was in a continued obtunded state with persistent tachypnea. Her abdomen was distended and mildly tender with minimal purulent brown-green fluid drainage from the JP drain. He assessed her with diabetes mellitus II, hypertension, obesity, "OSA" (obstructive sleep apnea), and cholelithiasis status post laparoscopy cholecystectomy 2/27 with hospital course complicated by acute kidney injury, volume overload, respiratory distress, likely hospital acquired pneumonia, tachycardia, and obtundation.

34. On March 6, 2012 at 2:20 a.m., Shail Mehta, MD, was notified that Ms. Bekis-Begay was having continued tachypnea with oxygen requirements increased to four liters. Arterial blood gasses (ABG) were consistent with acute respiratory acidosis. Her saturations were 94% on four liters nasal cannula, blood pressure 129/82, and heart rate 120. Her respirations were in the 40's to 50's, she was taking shallow breaths, and she had symmetric coarse breath sounds. Trial of BPAP was attempted and the ABG was to be repeated in two hours. If carbon dioxide did not improve, intubation was to be considered.

35. On March 6, 2012, Dr. Higgins noted the events of the weekend. A CT scan of the abdomen was taken on March 4, 2012. Dr. Higgins noted, however, that Ms.

Bekis-Begay continued to have a scant amount of purulent odorless material from the JP drain in the area of the liver bed.  The white blood count was also elevated at 19.000**.**  She noted that Ms. Bekis-Begay was still obtunded, but the acute renal failure seemed to have resolved.  She ordered a gram stain and culture of the JP drainage.  If the blood count remained elevated, she would suggest a repeat CT scan with oral contrast.

36. On March 6, 2012, Erica Markovitz, MD was called by nursing to evaluate Ms. Bekis-Begay at approximately 10:30 pm.  She continued to be tachycardic in the 120's, saturations were in the low 90's, and respirations in the 50's on BPAP.  She had decreased urine output over the prior several hours and her abdomen was tender and somewhat firm.  She discussed the case with Dr. Higgins by phone.  There was no imminent need to return the patient to the operating room, especially given the riskiness of another surgery for this patient.  They were to consider a repeat CT scan in the morning to evaluate for fluid collection or abscess.

37. On March 6, 2012, about 11:15 p.m., Dr. Markovitz was again called to evaluate Ms. Bekis-Begay whose oxygen saturations were in the high 70's and low 80's with increased respirations.  She noted she had just seen the patient about 20 minutes before and she was tachypneic, but the saturations were in the high 90's.  The emergency room physician was to be notified of the change in status and need for intubation. At approximately 11:15 pm, the physician was called to bedside from the emergency room as Ms. Bekis-Begay was in respiratory failure.  Following intubation, her color and breath sounds changed. Ms. Bekis-Begay was intubated by the ER physician. The medical team resuscitated Ms. Bekis-Begay.

38. On March 8, 2012, a repeat CT scan was taken. The only changes noted by the radiologist was the very large volume of intraperitoneal and hepatic subcapsular blood products are new compared to the prior exam; density of the blood products suggest recent, if not ongoing, hemorrhage; no distinct abscess.

39. On March 9, 2012, Ms. Bekis-Begay was returned to the operating room at approximately 10:08 a.m. after developing septic shock "five to seven days" postoperative from her laparoscopic cholecystectomy. According to the report, CT imaging was highly suggestive of fluid that was felt to be blood in the pelvis and left side of the abdomen. At surgery, a perforated duodenal ulcer was found.

40. On March 10, 2012, the extremities were noted to have anasarca (massive edema) and blistering with multiple cold toes and purplish discoloration. Dr. Finn noted that the source of infectious disease was "now clearly intra-peritoneal from duodenal ulcer".

41. As a result of her physical deterioation, Ms. Bekis-Begay was transferred to the University of New Mexico Hospital on March 18, 2012.

42. On March 19, 2012, Ms. Bekis-Begay underwent surgical consultation for peritonitis, status post laparoscopic cholecystectomy with duodenal perforation. It was noted that she had undergone cholecystectomy at the NNMC that was complicated by a perforated duodenum that caused sepsis and acute respiratory distress syndrome. On assessment, it was noted her right upper quadrant drain whose contents were frank bile, was concerning for a persistent bile leak, biliary injury versus persistent duodenal fistula.

43. On March 29, 2012, Ms. Begay was reevaluated by surgery which noted the duodenal fistula was likely leaking from the Graham patch repair.

44.     On April 7, 2012, Ms. Bekis-Begay, with family gathered at her bedside, was removed from the ventilator around 5:30 pm.  Ms. Bekis-Begay died at 8:08 p.m.

45.     On May 24, 2012, the New Mexico Office of the Medical Investigator entered its report of findings indicating that the cause of Ms. Bekis-Begay's death was complications of a perforated duodenal ulcer.

## COUNT I

## MEDICAL NEGLIGENCE AGAINST DEFENDANT
## THE UNITED STATES OF AMERICA

46.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 45 as though fully recited at length herein.

47.     At all times material hereto, the relationship of medical provider-patient existed between Irene Bekis-Begay and the physicians at the NNMC, and other treating physicians and medical personnel.

48.     Pursuant to the provision of the Federal Tort Claims Act, the United States is liable for the negligent acts, omission, and errors of its employees or agents acting with in the scope of their duties, as well as liable for any and all independent contractors who may have been employed and under the control and direction of Defendant at its medical facilities.

49.     At all times pertinent hereto, and as to all acts alleged herein, the physicians and other medical providers and personnel were employees or agents of Defendant, acting within the scope of their duties, and otherwise acting with the full knowledge and consent of the United States.

50.     The United States and its employees were negligent as follows:

A. Ms. Bekis-Begay underwent surgery on February 27, 2012 and within 48 hours had to be admitted for evaluation by family medicine for coagulopathy, and monitored for bile leak. At the time of the admission, Ms. Bekis-Begay was producing greenish brown non-odorless fluid from her drain. Dr. Higgins breached the standard of care when she failed to identify and treat a suspected hollow viscous injury in an immediate post-operative abdominal surgery patient in distress;

B. Failure to have an operational CT scan machine available at the NNMC requiring Ms. Bekis-Begay to be referred to Weaver, Four Corners, and San Juan for the ordered diagnostic radiology procedure;

C. Negligently relied on Weaver, Four Corners, and San Juan in the performance and reading of the February 29, 2012 CT Scan;

D. On March 9, 2012, an exploratory laparotomy was performed at the NNMC. At surgery, a perforated duodenal ulcer was found that was partially walled off in the right upper quadrant area, almost in a posterior position on the duodenum.

51. The United States is therefore vicariously liable for the negligent acts of the physicians at the NNMC and other medical personnel as alleged herein.

52. The United States owed Ms. Bekis-Begay the duty to provide medical care of a nature and quality that was appropriate for a patient such as Irene Bekis-Begay.

53. In treating and caring for Irene Bekis-Begay, the United States failed to exercise ordinary care, and this failure proximately resulted in the death of Irene Bekis-

Begay. Among other things, the United States' employees were negligent, without limitation, in the following regards:

    A.    Failure to possess and apply the knowledge, skill, and care of a reasonably qualified practitioner under similar circumstances;

    B.    Failure to use reasonable care when performing examinations, care, and treatment of Irene Bekis-Begay;

    54.    As a direct, proximate and foreseeable result of the breach of the standard of care, negligent acts and omissions of the United States, Irene Bekis-Begay died on April 7, 2012.

## COUNT II

## MEDICAL NEGLIGENCE AGAINST DEFENDANT ROBERT WEAVER, III, MD

    55.    Plaintiffs re-allege and incorporate Paragraphs 1 through 54 as though fully stated at length herein.

    56.    At all times material, Weaver was a medical doctor engaged in the practice of radiology. Weaver, upon information and belief, was an employee, and/or a contractor, and/or or owner with Four Corners. Weaver was an employee, owner, and/or an agent of himself and Four Corners in performing medical procedures with San Juan.

    57.    Weaver was not a qualified health care provider (QHP) arising under the New Mexico Medical Malpractice Act ("Act")(NMSA, 1978 Section 41-5-1, *et. seq.*, thereby allowing Plaintiffs to bring these causes of action without having to exhaust the administrative requirements of the Act.

    58.    On February 29, 2012, Ms. Bekis-Begay underwent a CT scan at San Juan without contrast as ordered by Dr. Higgins and performed by Weaver. This CT scan

revealed scattered small consolidations consistent with infection, elevated right hemidiaphragm with compressive hemidiaphragm, and pneumoperitoneum consistent with the patient's post-operative state.

59.  In treating and caring for Irene Bekis-Begay, Weaver failed to exercise ordinary care, and this failure proximately resulted in the death of Irene Bekis-Begay. Weaver was negligent, without limitation, in the following regards:

A.  Failure to properly interpret the CT scan of February 29, 2012;

B.  Failure to possess and apply the knowledge, skill, and care of a reasonably qualified medical practitioner under similar circumstances;

C.  Failure to use reasonable care when performing examinations, care, and treatment of Irene Bekis-Begay;

60.  As a direct, proximate and foreseeable result of the breach of the standard of care, negligent acts and omissions of Weaver, Irene Bekis-Begay died on April 7, 2012.

## COUNT III

## MEDICAL NEGLIGENCE AGAINST DEFENDANT FOUR CORNERS

61.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 60 as though fully recited at length herein.

62.  Four Corners was the employer, owner, or contractor with Weaver, who performed radiological services for Four Corners and San Juan.

63.  As the employer of Weaver, Four Corners is vicariously liable arising under the doctrine of respondeat superior for any negligence attributable to its employee.

64. In treating and caring for Ms. Bekis-Begay, Four Corners failed to exercise ordinary care, and this failure proximately resulted in the death of Ms. Bekis-Begay, whose conduct was negligent, without limitation, in the following regards:

A. Failure to properly interpret the CT scan of February 29, 2012;

B. Failure to possess and apply the knowledge, skill, and care of a reasonably well qualified practitioner or radiologic enterprise under similar circumstances;

C. Failure to use reasonable care when performing examinations, care, and treatment of Ms. Bekis-Begay;

65. As a direct, proximate and foreseeable result of the breach of the standard of care, negligent acts and omissions of Four Corners, Ms. Bekis-Begay died on April 7, 2012.

## COUNT IV

### MEDICAL NEGLGIENCE AGAINST DEFENDANT SAN JUAN REGIONAL MEDICAL CENTER

66. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 66 as though fully recited at length herein.

67. San Juan granted Weaver medical privileges to perform radiological services for Four Corners at San Juan which provided CT scan equipment at the time and place where such negligent conduct occurred. Such negligence gives rise to liability under the doctrine of respondeat superior. San Juan additionally issued Weaver identification badge for his medical services at San Juan's Department of Radiology.

68. San Juan billed patients (or the United States) for services rendered by physicians, including Weaver, in the Department of Radiology for diagnostic radiology procedures.

69. San Juan had the power to terminate physicians, including Weaver, provided under an agreement, contract, or memorandum of understanding.

70. Physicians provided under the contract, agreement, or memorandums were required to comply with all policies bylaws, rules, and regulations of Defendant San Juan and its medical staff.

71. The United States was obliged to pay San Juan for medical services provided to Navajo patients.

72. Physicians working in the San Juan Department of Radiology, or those on contract, agreement, or memorandum, were required to participate in a quality assurance monitoring program and were required to follow a number of other specific policies dealing with the treatment of patients according to policies adopted by San Juan.

73. San Juan granted Weaver medical privileges and issued an identification bade to perform radiological services for Four Corners. San Juan provided CT equipment at the time and place where such negligent conduct occurred. Such negligent conduct created vicariously liability arising under the doctrine of respondeat superior for any negligence attributable, without limitation, to its employees, agents, owners, or contractors.

74. In treating and caring for Ms. Bekis-Begay, San Juan failed to exercise ordinary care, and this failure proximately resulted in the death of Ms. Bekis-Begay. Such conduct was negligent, without limitation, in the following regards:

    A. Failure to possess and apply the knowledge, skill, and care of a reasonably well qualified practitioner under similar circumstances;

B. Failure to use reasonable care when performing radiologic examinations, care, and treatment of Irene Bekis-Begay;

C. Negligent readings of the CT scan and reported to Dr. Higgins at the NNMC.

75. As a direct, proximate and foreseeable result of the breach of the standard of care, negligent acts and omissions of San Juan, Ms. Bekis-Begay died on April 7, 2012.

## COUNT V

### APPARENT/OSTENSIBLE AGENCY AGAINST DEFENDANTS UNITED STATES, WEAVER, FOUR CORNERS AND SAN JUAN

76. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 75 as though fully recited at length herein.

77. There existed an apparent agency relationship by and between the United States, Weaver, Four Corners, and San Juan to establish liability under the doctrine of respondeat superior.

78. At all times material, Weaver, Four Corners, and potentially other unknown defendants were ostensible agents of San Juan and/or the United States.

79. Defendants' conduct in performing and interpreting the CT scan on February 29, 2012 created an apparent agency relationship.

80. Each of the defendants were negligent through administrative inadequacy resulting in the CT scan being negligently interpreted and communicated to NNMC.

81. As a direct, proximate and foreseeable result of the breach of the standard of care, negligent acts and omissions of Defendants, Ms. Bekis-Begay died on April 7, 2012.

## COUNT VI

### LOSS OF CHANCE

82. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 81 as though fully recited at length herein.

83. Plaintiffs invoke the doctrine of Loss of Chance as allowed and recognized under New Mexico law.

84. As a direct, proximate and foreseeable result of the negligent acts and omissions of Defendants, jointly and severally, Irene Bekis-Begay died on April 7, 2012.

## COUNT VII

### LOSS OF CONSORTIUM

85. Plaintiffs re-allege and incorporates by reference Paragraphs 1 through 84 as though fully recited at length herein.

86. Plaintiff Tsosie brings her individual claims for the loss of consortium of her mother, Irene Bekis-Begay.

89. As a direct, proximate and foreseeable result of the negligent acts and omissions of Defendants, jointly and severally, Ms. Bekis-Begay died on April 7, 2012.

WHEREFORE, Plaintiffs pray for an award of damages jointly and severally against all the defendants sufficient to fully compensate Plaintiffs for all the injuries and damages described herein, for pre and post judgment interest, for taxable costs, and for such other further relief as the Court may deem proper.

...

## **DEMAND FOR JURY TRIAL**

Plaintiffs make a demand for a jury on those issues so triable.

Respectfully submitted,

BARUDIN LAW FIRM, P.C.

*<u>Electroncially signed and filed 12-22-14</u>*
By:  Theodore W. Barudin
7900 Menaul Blvd NE
Albuquerque NM  87110-4606
(505) 332-1800
Barudinlaw@aol.com